AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. **CR 21-70258-MAG** |
| SANDRA ESTHELA MORALES TIJERNA | ) | |
| *Defendant(s)* | ) | |

FILED
Feb 11 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   FEBRUARY 9, 2021   in the county of   SAN MATEO/SANTA CLARA   in the
NORTHERN   District of   CALIFORNIA   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 3 | ACCESSORY AFTER THE FACT |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT OF SA BRIAN SCHLOFMAN.

☑ Continued on the attached sheet.

Approved as to form  _AJS_
AUSA Alexandra Shepard

/s/ Brian Schlofman w/permission by VKD
*Complainant's signature*

Special Agent Brian Schlofman
*Printed name and title*

Sworn to before me by telephone.

Date: February 11, 2021

*Judge's signature*

City and state: San Jose, CA

Hon. Virginia K. DeMarchi
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Brian Schlofman, a Special Agent of the Federal Bureau of Investigation (FBI) and a Task Force Agent with the Drug Enforcement Administration (DEA), being duly sworn, state:

## INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I make this affidavit in support of a Criminal Complaint charging **Sandra Esthela MORALES Tijerina** with being an accessory after the fact in violation of 18 U.S.C. § 3.

3. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents and witnesses. In addition, where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

4. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint.

## AFFIANT BACKGROUND

5. I am a Special Agent of the Federal Bureau of Investigation ("FBI") currently assigned as a Task Force Agent to the Drug Enforcement Administration ("DEA") San Jose Resident Office ("SJRO"). As a Special Agent with the FBI, my investigations focus on large-scale narcotics offenders. I have been employed by the FBI since January 2019. Prior to being assigned to SJRO, I received nineteen weeks of specialized training at the FBI Academy in

Quantico, Virginia. This training included several hundred hours of comprehensive, formalized instruction in, among other things, basic narcotics investigations, detection, interdiction, United States narcotics laws, financial investigations and money laundering, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. I have participated in several investigations relating to drug trafficking, the arrests of at least five persons involved in drug trafficking, and on at least five occasions, I have been involved in searches of locations in connection with drug trafficking investigations. As a result of my training and experience, I am familiar with how various drugs, including crystal methamphetamine, are used and the typical distribution and trafficking methods used by drug dealers and traffickers. I am also familiar with the various methods generally utilized by traffickers to transport drugs in and through the state of California.

6. I have spoken to, and worked with, more experienced federal, state, and municipal narcotics agents and officers. During the course of my employment as a Special Agent, I have participated in several investigations of illicit drug trafficking organizations involving the use of confidential informants, electronic and physical surveillance, the analysis of telephone toll records, investigative interviews, and the service of search and arrest warrants. These investigations include the unlawful importation, possession with intent to distribute, and distribution of controlled substances, as well as the related laundering of monetary instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

7. I have been involved in the execution of numerous federal search warrants related to drug trafficking investigations. As a result, I have encountered and become familiar with the various tools, methods, trends, paraphernalia, and related articles used by traffickers and trafficking organizations in their efforts to import, conceal, manufacture and distribute controlled substances.

8. I am also familiar with the manner in which narcotics traffickers use vehicles,

telephones, cellular telephone technology, coded communications and slang-filled conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations. Furthermore, I have become familiar with the manner in which narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds.

9. Based upon my training and experience, and the training and experience of other agents, I know that it is common practice for narcotics traffickers to routinely utilize telephones, and cellular telephones in order to communicate with their customers, suppliers, couriers, and other co-conspirators and in order to insulate themselves from detection by law enforcement. Moreover, it is not unusual for them to initiate such service under the name of an associate or a fictitious name. Furthermore, it is not unusual for narcotic traffickers to utilize false or incomplete address(es) while filling out subscriber information related to their cellular telephone(s). Therefore, such data often will not be useful to determine the location of a particular cell phone user.

10. Based upon my training and experience, along with the training and experience of other agents, I believe that it is common practice for narcotics traffickers to use vehicles to transport and store drugs and drug-trafficking proceeds. Furthermore, drug traffickers will routinely drive vehicles to and from meetings with customers, suppliers, couriers, and other co-conspirators during which they negotiate and conduct narcotics transactions. Narcotic traffickers will also use hidden compartments or natural voids within their vehicles in efforts to thwart law enforcement detection. It is common for narcotics traffickers to falsify information including, but not limited to, the vehicle's registration. Narcotic traffickers will also use vehicles to scout, detect, and thwart law enforcement officials. Moreover, narcotic traffickers commonly use drug proceeds to purchase their vehicles.

11. Based upon my training and experience, as well as the collective knowledge and experience of other agents in my office, I am aware that it is generally a common practice for drug traffickers to store their drug inventory and drug related paraphernalia in their residences

and vehicles. Furthermore, it is generally a common practice for drug traffickers to maintain their records relating to their drug trafficking activities. Because drug traffickers in many instances will "front", i.e. give with an expectation of later payment, controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of the amounts paid and owed, and such records could also be maintained close at hand so as to readily ascertain current balances. Additionally, telephone/address listings of clients and suppliers necessarily may be maintained and be immediately available to other drug traffickers in order to efficiently conduct their drug trafficking business. Moreover, it is also a generally common practice for traffickers to conceal at their residences and inside their vehicles large sums of money, either the proceeds from drug sales or funds to be utilized to purchase controlled substances. In this connection, drug traffickers typically make use of wire transfers, cashier's checks, cryptocurrency a/k/a digital currency, and money orders to pay for controlled substances. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in their residences and vehicles.

12. I have discussed with other more experienced officers and agents the various packaging, preparation, methods of operation, and security measures which are often employed by narcotics traffickers. I have received training on various methods in which illegal drugs are produced.

13. My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following: (a) my own involvement in drug investigations and searches during my career as a law enforcement officer, as previously described; (b) my involvement in what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations; and (c) other intelligence information provided through law enforcement channels.

14. The conclusions and opinions set forth below are based on my experience and

training as a Special Agent (hereinafter "SA"), my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Throughout this Affidavit, all sentences that begin with the words "I believe" are based upon this combination. The facts set forth in this affidavit are known to me as a result of my personal participation in this investigation and through conversations with other SAs and investigators from the FBI and DEA as well as with other law enforcement personnel. The following is not an exhaustive recitation of the facts I have learned during the course of this investigation, but are the facts that I believe sufficiently establish probable cause. References to law enforcement personnel in this case will generally be referred to as "agents," unless specified by name and agency.

## APPLICABLE STATUTES

15. Under 18 U.S.C. § 3, it is unlawful for a person, knowing that an offense against the United States has been committed, to receive, relieve, comfort or assist the offender in order to hinder or prevent his apprehension, trial or punishment.

## STATEMENT OF PROBABLE CAUSE

**A.   Arrest of Miguel Martin PACHECO Martinez and Seizure of Approximately 28 Kilograms of Methamphetamine on February 9, 2021**

16. On February 9, 2021, PACHECO was stopped by a California Highway Patrol (CHP) officer for having tinted front-side windows and missing a front license plate. PACHECO was driving a white Nissan Sentra bearing California license plate 8BUZ467 (hereinafter, "white Sentra"). During the traffic stop, PACHECO provided consent to Officer Padilla to search PACHECO's vehicle. Pursuant to a positive alert by a narcotics K-9 accompanying the CHP Officer, CHP conducted a search of the white Sentra and found a green duffel bag in the trunk containing approximately 28 kilograms of a white, crystalline substance, suspected to be methamphetamine. CHP detained PACHECO. Later that same day, DEA agents from the San Jose Resident Office took custody of PACHECO and the 28 kilograms of suspected methamphetamine.

17. DEA agents transported PACHECO to DEA SJRO for processing and interviews. FBI SA Brian Schlofman advised PACHECO of his Miranda rights. PACHECO declined to cooperate and requested to speak with his lawyer. PACHECO also requested the telephone number for his girlfriend. PACHECO identified his girlfriend as "Sandra," and stated that he wanted to call her to let her know that PACHECO had been arrested. With PACHECO's consent, SA Schlofman located the telephone number for "Sandra," listed in his contacts as "Mi Amor", which was 650-716-3419 (hereinafter, "MORALES Phone").[1]

18. Later that same day, February 9, 20201, PACHECO was transported to Santa Rita Jail where U.S. Marshals Service (USMS) took custody of PACHECO. PACHECO had previously been charged in a sealed indictment on December 3, 2020 for drug trafficking in violation of 21 U.S.C. 846, 841(a)(1) and (b)(1)(A) (*U.S. v. Pacheco*, CR-20-000459 EJD, N.D. California).

**B.   Search Warrant on PACHECO Residences at 31 Goodyear St., San Jose, CA on February 10, 2021**

19. On February 9, 2021, the Honorable Virginia K. DeMarchi, United States Magistrate Judge of the Northern District of California, authorized search warrant CR-21-70236 VKD ordering the search of 31 Goodyear Street, San Jose, California, the known residence of PACHECO. On February 10, 2021 Special Agents of the FBI and DEA executed the search warrant on 31 Goodyear Street.

20. Upon entering the residence, agents encountered Santiago Garcia and Jose Luis Bueno (collectively, "ROOMMATES"). Agents secured Garcia and Bueno in the living room of 31 Goodyear Street for officer safety. Agents cleared the rest of 31 Goodyear Street without incident.

21. Agents spoke with Garcia and Bueno regarding PACHECO. Garcia and Bueno

---

[1] Administrative subpoenas for MORALES Phone revealed subscriber information as "Irma E Tijerina" at "430 Pine Ave, Half Moon Bay, CA 94019-1606."

stated that Garcia, Bueno, and PACHECO were renting 31 Goodyear Street and were roommates. Garcia and Bueno stated that they did not know PACHECO very well.

22. Garcia stated that on February 9, 2021, at approximately 7:30 p.m., PACHECO's girlfriend came to the residence with another female and one male on the evening of February 9, 2021. ROOMMATES described the three individuals (herein "UNSUBS") as possibly being siblings, wherein one female had blonde hair and the male was about 5'10'', had a beard, and was skinny. ROOMMATES stated that the UNSUBs went into PACHECO's room and removed approximately 10 white grocery bags and departed the residence. ROOMMATES were unaware of what was in the bags. ROOMATES stated the UNSUBS arrived and departed in a white Nissan sedan.

C. **Identification of UNSUBS**

23. Financial databases confirmed that MORALES Phone was used by SANDRA ESTHELA MORALES-TIJERINA (MORALES), date of birth November 2, 1987, address 3 Maidenhair Walk, Half Moon Bay, California 94019 for money wire transfers as recently as January 15, 2021. Database checks identify MORALES as owning a white Nissan, bearing California plate 8CPB734. On February 10, 2021, Agents observed the Nissan at the 3 Maidenhair Walk address.

24. Information obtained from Lexis Nexis Accurint revealed that OSCAR MORALES-TIJERINA (OSCAR), date of birth July15, 1983, also resides at 3 Maidenhair Walk, Half Moon Bay, California 94019. Based on the biographical information and picture of Oscar provided by the California Department of Motor Vehicles, Oscar matches the description of the skinny, bearded individual described by ROOMATES. According to CA DMV, OSCAR is 5'7'', 140 pounds, and has a beard.

25. Based on the common last name, "MORALES-TIJERINA" and common address, SANDRA and OSCAR are likely siblings, as suggested by the ROOMATES.

D. **Jail Calls Between PACHECO And MORALES**

26. On February 10, 2021, Agents obtained PACHECO's monitored and recorded

phone calls from the Santa Rita Jail. PACHECO used the Santa Rita Jail phone to exchange approximately 10 phone calls with MORALES Phone.[2] In several of these calls, PACHECO appeared to be giving MORALES instructions about what she should do following his arrest. In summary and in relevant part, PACHECO instructed MORALES to go to PACHECO's residence and to take items including a bag of money and a black bag, and give the black bag to "Chubs." Chubs is known to agents as the alias of a drug trafficker named Raymond ARAUJO.

27. In call #1, at 4:43 p.m., PACHECO advised MORALES that he was at Santa Rita (Santa Rita jail) and that the police stopped him on the way back from LA. In Call #2, at 5:14 p.m., PACHECO told MORALES to tell Chubs that the case went federally since the FBI brought him back. In Call #6, at 7:14 p.m. PACHECO told MORALES that the U.S. Marshals are involved. Based on the foregoing facts, I believe MORALES was aware that PACHECO had committed a federal crime.

28. In call #3, at 6:04 p.m., MORALES reminded PACHECO that their call was being recorded.

29. In call #1, MORALES asked PACHECO what she should do. In that and subsequent calls, PACHECO instructed MORALES to take items from his room, including money and a black bag for Chubs. In Call #1, he instructed MORALES to go into his house, get a hidden key, go into his room, go to the air conditioner and find a white Hugo Boss bag with a Target bag inside and money. He told her, in summary, to gather it all and take it and put it away, and to do it now. In call #3, at 6:04 p.m., MORALES told PACHECO she was going to meet "El Gordo" (Chubs) after she gets the black package. In call #4, at 6:25 p.m., MORALES appeared to be on the phone with PACHECO as she went into his house. PACHECO told one of his roommates to let MORALES in and stayed on the line as she went up the stairs. In subsequent calls MORALES told PACHECO she picked up the requested items and would give

---

[2] The phone calls occurred in Spanish. DEA SA Hilda Rubino, who is a fluent Spanish speaker, listened to the calls and provided translated summaries.

anything she finds related to "that stuff" to Chubs.

30.     Based on my training and experience, I believe that narcotics traffickers commonly attempt to thwart law enforcement efforts by contacting their associates and relatives to hide or dispose of narcotics or contraband to minimize culpability.  I believe that PACHECO instructed his girlfriend, MORALES, to retrieve narcotics and contraband from 31 Goodyear Street and deliver it to ARAUJO.  I believe that, based on the statements of the residents of 31 Goodyear, MORALES followed PACHECO's instructions and retrieved suspected contraband from PACHECO's bedroom.  As a result, I believe MORALES assisted PACHECO's attempts to thwart law enforcement efforts relating to PACHECO's drug trafficking activities.

## CONCLUSION

31.     Based on the foregoing, I hereby assert that probable cause exists to believe that Sandra Esthela MORALES Tijerina violated 18 U.S.C. § 3.

> /s/ Brian Schlofman w/permission by VKD
> Brian Schlofman
> Special Agent, FBI
> Task Force Agent, DEA

Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P 4.1 and 4(d) on this __11__ day of February, 2021.

_____
HONORABLE VIRGINIA K. DEMARCHI
UNITED STATES MAGISTRATE JUDGE

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

**BY:** [X] COMPLAINT   [ ] INFORMATION   [ ] INDICTMENT   [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

## OFFENSE CHARGED

18 U.S.C. 3 (Accessory After the Fact)

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

**PENALTY:** Not more than one-half the maximum term of imprisonment (life in prison), or one-half the maximum fine ($10,000,000), prescribed for the punishment of the principal, or both. Mandatory special assessment of $100. Supervised release of up to five years.

**DEFENDANT - U.S**

▶ SANDRA ESTHELA MORALES TIJERINA

**DISTRICT COURT NUMBER**

CR 21-70258-MAG

## PROCEEDING

**Name of Complaintant Agency, or Person (& Title, if any)**
Federal Bureau of Investigation

[ ] person is awaiting trial in another Federal or State Court, give name of court

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   [ ] U.S. ATTORNEY   [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

MAGISTRATE CASE NO.

**Name and Office of Person Furnishing Information on this form**  David L. Anderson
[X] U.S. Attorney   [ ] Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned)**  Alexandra Shepard

## DEFENDANT

**IS *NOT* IN CUSTODY**
1) [ ] Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [X] On this charge
5) [ ] On another conviction   [ ] Federal   [ ] State
6) [ ] Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed?  [ ] Yes   [ ] No
If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year  2/10/21

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

**FILED**
Feb 11 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
[ ] SUMMONS   [X] NO PROCESS*   [ ] WARRANT     Bail Amount: _____

If Summons, complete following:
[ ] Arraignment   [ ] Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

**Comments:** Defendant is currently in the custody of the USMS.